IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DAVID WOLF and MARY THEODORE,<br><br>        Plaintiffs,<br>  v.<br><br>TRAVELERS PERSONAL INSURANCE COMPANY,<br><br>        Defendant. | Case No.: 3:24-cv-01628-AN<br><br>OPINION AND ORDER |

Plaintiffs David Wolf and May Theodore bring this action against defendant Travelers Personal Insurance Company, alleging state law claims of breach of contract and negligence/tortious insurance bad faith. On October 23, 2024, default was entered against defendant. On October 29, 2024, defendant moved to set aside the entry of default. On November 1, 2024, plaintiffs moved for default judgment. After reviewing the parties' filings, the Court finds this matter appropriate for decision without oral argument. Local R. 7-1(d). For the reasons stated below, defendant's motion is GRANTED, and plaintiffs' motion is DENIED.

## LEGAL STANDARD

### A.    Motion to Set Aside Default

A "court may set aside an entry of default for good cause[.]" Fed. R. Civ. P. 55(c). To determine "good cause," a court must consider: "(1) whether [the defaulting party] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice" the other party. *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (quoting *Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004)). A court may deny a motion to set aside default if any of the three factors is true. *Id.* (citing *Franchise Holding II*, 375 F.3d at 925-26); *see Brandt v. Am.*

*Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1112 (9th Cir. 2011). "The court's discretion is especially broad where . . . it is entry of default that is being set aside, rather than a default judgment." *O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir. 1994) (internal quotation marks omitted) (quoting *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986)).

The party seeking to set aside default has the burden to show that good cause exists. *Franchise Holding II*, 375 F.3d at 926. However, "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (per curiam).

**B.    Motion for Default Judgment**

After entering an order of default, a district court has discretion to issue a default judgment. *See* Fed. R. Civ. P. 55(b); *DirecTV, Inc. v. Huynh*, 503 F.3d 847, 852 (9th Cir. 2007), *cert. denied*, 555 U.S. 937 (2008). The district court has "considerable leeway as to what it may require as a prerequisite to the entry of a default judgment." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987) (per curiam) (footnote omitted); *see Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising their discretion, courts in the Ninth Circuit consider the factors set forth in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986). The *Eitel* factors are:

> "(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the operative complaint; (4) the sum of money at stake in the litigation; (5) the possibility of dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits."

*Id.* at 1471-72. However, the "starting point" of a court's analysis "is the general rule that default judgments are ordinarily disfavored" and that cases should be decided upon the merits "whenever reasonably possible." *Id.* at 1472 (citation omitted).

All well-pleaded factual allegations in the complaint must be taken as true, other than the amount of damages. *TeleVideo Sys., Inc.*, 826 F.2d at 917-18 (citation omitted); *DirecTV, Inc.*, 503 F.3d at 854 (citations omitted); *see* Fed. R. Civ. P. 8(b)(6). "However, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DirecTV, Inc.*, 503 F.3d at 854 (internal quotation

marks and citation omitted).

## BACKGROUND

Plaintiffs filed their complaint in this Court on September 25, 2024. Plaintiffs allege that defendant sold plaintiffs a homeowners insurance policy ("Policy") and that defendant failed to properly inspect, adjust, and pay their claim made under the Policy following damage to plaintiffs' property due to an accidental discharge of water from a plumbing fixture. Compl., ECF [1], ¶¶ 6-25. Defendant was served on September 27, 2024, making its answer due on October 18, 2024. Return of Serv., ECF [4]; *see* Fed. R. Civ. P. 12(a)(1)(A). Defendant did not appear, answer, or otherwise respond to the complaint by that deadline. On October 21, 2024, plaintiffs moved for entry of default. On October 23, 2024, the Court granted plaintiffs' motion, and the Clerk entered default against defendant. ECF [8], [9].

On October 28, 2024, defendant's counsel filed a notice of appearance and became aware that default had been entered against defendant. ECF [10]; Def. Mot. to Set Aside Order of Default ("Def. Mot."), ECF [11], at 11. On October 29, 2024, defendant moved to set aside the order of default. Def. Mot. Defendant states that upon receipt of the service papers, its counsel's staff calendared an erroneous response deadline of October 28, 2024, instead of October 18, 2024. *Id.* at 8. Defendant asserts that its counsel had a complete answer drafted and ready to file based on the erroneous date. *Id.* at 9. Defendant states that due to work-related travel between September 26, 2024, and October 21, 2024, and obligations in other litigation matters, its counsel placed an "intense reliance" on the erroneous deadline. *Id.*

On November 1, 2024, plaintiffs moved for default judgment. Pl. Mot. Default J., ECF [13]. On November 14, 2024, defendant filed its answer to plaintiffs' complaint. Answer, ECF [20]. In its answer, defendant denies plaintiffs' allegations and asserts eight affirmative defenses.

## DISCUSSION

**A.    Defendant's Motion to Set Aside Default**

There is good cause to set aside the entry of default because defendant's conduct was not culpable, defendant has a potentially meritorious defense, and setting aside default will not prejudice

3

plaintiffs.

    1.    *Culpable Conduct*

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 698 (9th Cir. 2001) (emphasis in original). The standard for intent depends on the legal sophistication of the defaulting party. *Mesle*, 615 F.3d at 1093. Where a party is legally sophisticated, "an understanding of the consequences of its actions may be assumed, and with it, intentionality." *Mesle*, 615 F.3d at 1093 (citing *Direct Mail Specialists, Inc. v. Eclat Computerized Tech., Inc.*, 840 F.2d 685, 690 (9th Cir. 1988)). Therefore, "[i]f a defendant 'has received actual or constructive notice of the filing of the action and failed to answer,' its conduct is culpable." *Franchise Holding II*, 375 F.3d at 926 (quoting *Direct Mail Specialists, Inc.*, 840 F.2d at 690). Where a party is not legally sophisticated, "[n]eglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision-making, or otherwise manipulate the legal process is not 'intentional.'" *Mesle*, 615 F.3d at 1092 (quoting *TCI Grp.*, 244 F.3d at 697). Rather, "a defendant's conduct [is] culpable . . . where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Emp. Painters' Tr. v. Ethan Enters., Inc.*, 480 F.3d 993, 1000 (9th Cir. 2007) (alteration in original) (quoting *TCI Grp.*, 244 F.3d at 698).

Defendant argues that default was due to excusable neglect, not culpable conduct. Defendant argues that it failed to timely respond because its counsel incorrectly calendared the response deadline as October 28, 2024, instead of October 18, 2024, and that it was ready to file an answer on October 28, 2024. Defendant also asserts that plaintiffs failed to meaningfully confer with defendant regarding their motion for entry of default. Defendant further argues that it was diligent in correcting the erroneously calendared deadline and associated untimely answer by filing the motion to set aside default within one day of discovering the entry of default.

Plaintiffs argue that defendant received actual notice of the filing and, given its legal sophistication, understood the consequences of failure to timely respond. Therefore, plaintiffs argue that

defendant is legally presumed to have intentionally failed to respond to plaintiffs' complaint. Plaintiffs further argue that defendant fails to overcome that legal presumption because these circumstances do not demonstrate excusable neglect.

As an initial matter, defendant is a legally sophisticated entity for the purpose of default analysis. A party is legally sophisticated if it has experience with litigation or has consulted with lawyers in response to the lawsuit. *Woodyard v. Prestige Care, Inc.*, No. 3:21-cv-01247-AC, 2022 WL 309298, at *3 (D. Or. Jan. 27, 2022) (citation omitted). Defendant is a large insurance company that is frequently party to or provides defense in litigation in state and federal courts around the country. Defendant was also represented by counsel at the time of default. Because defendant is legally sophisticated, the court may assume intentionality based solely on its default. *Mesle*, 615 F.3d at 1093 (citing *Direct Mail Specialists, Inc.*, 840 F.2d at 690).

However, the circumstances in this case do not warrant an assumption of intentionality. To be sure, defendant's counsel erred in calculating and calendaring an incorrect answer deadline and failing to timely file an answer, and any attempt to blame an assistant for the erroneous deadline is not well taken. Defendant does not dispute that it failed to timely appear after it received actual notice of the lawsuit. Defendant also provides no explanation as to why it did not file an answer until November 14, 2024, seventeen days after the erroneous deadline and twenty-seven days after the actual deadline. This undermines defendant's argument that it was prepared to file an answer by the erroneous deadline. Moreover, defendant's assertion that plaintiffs did not notify it before requesting default is irrelevant because neither Rule 55(a) nor Local Rule 55-1 require notice where a defendant has not timely appeared. *See Haw. Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 512 (9th Cir. 1986).

Nonetheless, once defendant's counsel was made aware of the entry of default, she quickly contacted plaintiffs' counsel to discuss setting aside entry of default and filed the instant motion within one day, a *de minimis* delay at most. *See Woodyard*, 2022 WL 309298, at *3; *see also O'Connor*, 27 F.3d at 364 (quoting *Mendoza*, 783 F.2d at 945-46) ("Where timely relief is sought from a default . . . and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the

5

default so that cases may be decided on their merits."). Defendant's subsequent filings demonstrate an intent to defend against this suit and comply with the judicial process, rather than an attempt to "take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process." *Mesle*, 615 F.3d at 1092. Based on these circumstances, there is no evidence that defendant intentionally failed to answer. Accordingly, defendant was not culpable, and this factor weighs in favor of setting aside default.

  2. *Meritorious Defense*

  A defendant seeking to set aside default "must present specific facts that would constitute a defense." *Mesle*, 615 F.3d at 1094 (quoting *TCI Grp.*, 244 F.3d at 700). That burden "is not extraordinarily heavy": "[a]ll that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense." *Id.* (quoting *TCI Grp.*, 244 F.3d at 700). The court should not decide whether the factual allegations are true at this stage, as "that question is the subject of later litigation." *Id.* (quoting *TCI Grp.*, 244 F.3d at 700). However, "a 'mere general denial without facts to support it' is not enough to justify vacating a default[.]" *Franchise Holding II*, 375 F.3d at 926 (9th Cir. 2004) (quoting *Madsen v. Bumb*, 419 F.2d 4, 6 (9th Cir. 1969)).

  Defendant argues that it has several meritorious defenses. In its motion, defendant states that it "denies [p]laintiffs' allegations of breach of contract and negligence" and "asserts a failure to state a claim defense, as [defendant] intends to argue that the claims of negligence cannot be brought within the context of the instant action and as [*sic*] not appropriately supported by Oregon law." Def. Mot. 5. Defendant argues that it "has also advanced several other affirmative defenses in its Answer, including comparative negligence and allegations regarding failure to cooperate and conditions precedent."[1] *Id.* In its response to plaintiffs' motion, defendant states that it has already issued hundreds of thousands of dollars to plaintiffs for covered losses and has continued to supplement payment as additional information is supplied. Defendant alleges that plaintiffs did not supply information that was necessary for continued

---

[1] As described above, defendant did not file its Answer until November 14, 2024, after plaintiff responded to its motion and noted that defendant had not yet filed its Answer.

adjustment of the claim in a timely manner, including contractor's estimates, invoices for repairs, and support for asserted personal property losses. Defendant also asserts that it is continuing to provide coverage of plaintiffs' additional living accommodations and that plaintiffs refused to agree to any of the ten proposed alternative living options that defendant presented and instead incurred up to $38,688.52 in hotel fees in two months, which reduced the available and applicable policy limits for alternative living accommodations.

Plaintiffs argue that at the time of their response, defendant had yet to file or otherwise provide a proposed answer to their complaint. Plaintiffs argue that defendant relies solely on attorney argument and makes broad, general statements, which are insufficient to state a meritorious defense. Plaintiffs further argue that defendant fails to articulate specific defenses against the claims, does not explain why plaintiffs' claims are not legally viable, and does not identify specific contractual provisions that form the basis of its defenses or state facts to support application of those provisions.

Defendant presents enough facts that, if true, would constitute a potentially meritorious defense. Under Oregon law, "an insurance policy's cooperation clause is enforceable[,] and a breach thereof excuses the insurer's obligations." *Assurance Co. of Am. v. MDF Framing, Inc.*, No. CV 06-169-MO, 2008 WL 361289, at *3 (D. Or. Feb. 7, 2008). An insured breaches a cooperation clause if the insurer establishes that "(1) the insurer diligently sought the insured's cooperation; (2) the insured willfully failed to cooperate; and (3) the insured's failure to cooperate prejudiced the insurer." *Id.* (citation omitted). The Policy contains duties to cooperate with the investigation of the claim and to provide records and documents as reasonably required. *See* Decl. Tessan Wess Supp. Def. Resp. Pl. Mot. Default J., ECF [22], Ex. 1, at 43. Defendant states that it has been and continues to be responsive to plaintiffs' preferences and requests, has made numerous attempts to adjust the claim, and has issued and continues to issue payments to plaintiffs. Defendant asserts that any delay in adjustment of the claim is because of plaintiffs' interference with defendant's ability to assess the claim and their failure to provide necessary information.

Additionally, defendant argues that plaintiffs' negligence/tortious insurance bad faith claim is prompted by the Oregon Supreme Court's ruling in *Moody v. Oregon Community Credit Union*, 371 Or.

7

772, 542 P.3d 24 (2023), but contends that that ruling does not allow plaintiffs to bring such a claim in a case involving an open and active coverage-accepted property insurance claim. In *Moody*, the court held that the plaintiff, "as the surviving spouse of a deceased breadwinner, ha[d] a legally protected interest sufficient to support a common-law negligence claim for emotional distress damages against her husband's life insurer for failure to reasonably investigate and promptly pay her claim for insurance benefits." *Id.* at 805. Accordingly, a plaintiff could seek emotional distress damages under a negligence *per se* theory if they show that an insurer breached its statutory duties and establish the remaining elements of a common law negligence claim. *Id.* However, the court "caution[ed] that [its] conclusion [] does not make every contracting party liable for negligent conduct that causes purely psychological damage, nor does it make every statutory violation the basis for a common-law negligence claim for emotional distress damages." *Id.* at 805-06. Once a violation of a statutory standard of care is proven, "the burden shifts to the violator to prove that he or she acted reasonably under the circumstances." *Deckard v. Bunch*, 358 Or. 754, 761 n.6, 370 P.3d 478 (2016) (citation omitted). Here, defendant argues that unlike *Moody*, which involved a denied claim for life insurance policy benefits, this case involves an ongoing and active homeowners insurance claim in which defendant has acknowledged coverage and has issued and continues to issue coverage payments. As described above, defendant asserts that it is responsive to plaintiffs' requests and continues to adjust the claim as plaintiffs provide supplemental information. Defendant further argues that no binding precedent supports a claim for negligence or emotional distress damages under these circumstances.

        Because defendant presents sufficient facts that, if true, would constitute potential valid defenses such as failure to state a claim, non-cooperation, and non-compliance with the terms of the Policy, defendant has a meritorious defense. Accordingly, this factor weighs in favor of setting aside default.

        3.    *Prejudice*

        "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *TCI Grp.*, 244 F.3d at 701. For a delay to be prejudicial, it must "result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Id.* "The standard is whether [a plaintiff's] ability to pursue [their] claim will be

hindered." *Falk*, 739 F.2d at 463.

Plaintiffs concede that they will not be prejudiced by setting aside default. Pl. Resp. to Def. Mot., ECF [19], at 2 n.1, 6 n.7. Plaintiffs argue that delayed recovery may cause significant harm in the form of exhausting the additional living expense coverage under the Policy, which would require plaintiffs to pay for alternative residence out of pocket until the property is repaired. Pl. Reply Supp. Pl. Mot. Default J., ECF [24], at 5. Nonetheless, this is insufficient to show that setting aside default will hinder plaintiffs' ability to pursue this action. Accordingly, plaintiffs will not suffer prejudice, and this factor weighs in favor of setting aside default.

For the foregoing reasons, there is good cause to set aside default, and the Court grants defendant's motion.

**B.    Plaintiffs' Motion for Default Judgment**

Because the Court sets aside the entry of default, plaintiffs' motion for default judgment is denied as moot.

## CONCLUSION

For the foregoing reasons, defendant's Motion to Set Aside the Order of Default, ECF [11], is GRANTED, and plaintiffs' Motion for Default Judgment, ECF [13], is DENIED as moot.

IT IS SO ORDERED.

DATED this 12th day of March, 2025.

_____
Adrienne Nelson
United States District Judge